IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| VICTOR MANUEL ALONZO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-14-CV-360-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C of the Local Court Rules of the Western District of Texas. For the reasons below, the Commissioner's decision is AFFIRMED.

### I. PROCEDURAL HISTORY

On January 27, 2012, Plaintiff filed applications for DIB and SSI in which he alleged disability since November 25, 2010 due to lumbar disc rupture and pain to both legs and arms. (R.

137-148, 170).[1] After his applications were denied initially and again upon reconsideration, Plaintiff requested a hearing. (R. 57-64, 69-74, 85-86). On March 12, 2013, Plaintiff appeared with his attorney for a hearing before an Administrative Law Judge ("ALJ"). (R. 40-52). His applications for benefits were denied by the ALJ's written decision issued on May 29, 2013. (R. 26-35). On July 1, 2014, the Appeals Council affirmed the ALJ's decision to deny benefits, thereby making it the final decision of the Commissioner. (R. 8-12).

## II. BACKGROUND

Plaintiff was born on March 29, 1967, making him 46 years old at the time of the ALJ's decision. (R. 137). He attended school through the fifth grade and is unable to communicate in English. (R. 43, 169, 170). He has past relevant work experience as a construction worker. (R. 43, 171). Plaintiff testified he can no longer work due to problems with his lungs, lower back, shoulders, and legs. (R. 44).

## III. ISSUES PRESENTED

Plaintiff presents the following issues for review: (1) whether the ALJ erred in finding Plaintiff's back impairment is not of listing-level severity; (2) whether the ALJ failed to accommodate Plaintiff's inability to communicate in English; and, (3) whether the ALJ's residual functional capacity ("RFC")[2] assessment is supported by substantial evidence.

---

[1] Reference to the record of administrative proceedings is designated by "(R. [page number(s)])."

[2] Residual functional capacity is defined in the regulations as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184 (July 2, 1996).

IV. DISCUSSION

A. Standard of Review

This Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole, and whether the proper legal standards were applied in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In her written decision, the ALJ determined as a threshold matter that Plaintiff met the

insured status requirements of the Social Security Act through December 15, 2015. (R. 28). The ALJ found Plaintiff had not engaged in substantial gainful activity since March 29, 2012, the amended onset date.[3] *Id.* At the next step, the ALJ determined Plaintiff has severe impairments consisting of lumbago, degenerative disc disease, chronic obstructive pulmonary disease, hypertension, and obesity. *Id.*

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29). Before reaching step four, the ALJ found Plaintiff retains the RFC to perform light work[4], except he can never climb ladders, ropes, or scaffolds; he can occasionally stoop, crouch, and crawl; and, he should avoid even moderate exposure to environmental irritants such as fumes, odors, dusts, and gasses, poorly ventilated areas, and exposure to chemicals. *Id.* Based on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff retains the RFC to perform other work that exists in significant numbers in the national and regional economy. (R. 34). Therefore, the ALJ determined at step five that Plaintiff was not disabled. *Id.*

D. Analysis of Plaintiff's Claims

    1. ALJ Properly Found Plaintiff's Back Impairment Did Not Meet Listing 1.04A

Plaintiff claims the ALJ erred at step three. First, Plaintiff cites *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), for the proposition that the ALJ's summary finding that Plaintiff's back

---

[3] At the hearing, Plaintiff's onset date was amended from November 25, 2010 to March 29, 2012. (R. 51-52).

[4] Light work is defined in the regulations as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

condition did not meet Listing 1.04 does not contain the required discussion of the evidence and is beyond meaningful judicial review. Additionally, Plaintiff argues the evidence shows his back impairment meets the listing. Both arguments are unavailing.

In *Audler*, the Fifth Circuit found the ALJ's summary conclusion–that the medical evidence indicated that claimant's impairments, while severe, were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P– to be beyond meaningful judicial review because the ALJ offered nothing to support her conclusion at step three. *Id.*, 501 F. 3d at 448. The appellate court made clear, however, that an exhaustive point by point discussion is not required. *Id.* Further, any error in the sufficiency of the discussion at step three is subject to a harmless error analysis. *Id.* The *Audler* court found the error was not harmless in that case because a diagnostic checklist indicated the claimant met the criteria of a listing, and there was no medical evidence to the contrary. *Id.*

In analyzing Plaintiff's claim, the Court looks to the regulations governing the third step of the sequential evaluation. At the third step, the ALJ determines whether the medical evidence meets or equals the criteria of a listed impairment in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). The Listing of Impairments in Appendix 1 describes conditions and impairments that are sufficiently severe to prevent an individual from engaging in *any* gainful activity, not just "substantial gainful activity," regardless of age, education or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, Plaintiff is automatically entitled to benefits if his impairment meets or equals the criteria of one of the listed impairments in Appendix 1 to Subpart P of Part 404. 20 C.F.R. §§ 404.1520(d), 416.920(d). Because the Listings were designed to operate as a presumption of disability that makes further

inquiry unnecessary, the medical criteria of the Listings are more restrictive than the statutory disability standard. *Zebley*, 493 U.S. at 532.

The burden of proof rests with Plaintiff to provide and identify medical signs and laboratory findings that support all criteria of a listed impairment. *Id.*, 493 U.S. at 530; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). The listings criteria are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). A mere diagnosis of a condition will not suffice. "For a claimant to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

To meet or equal the requirements of Listing 1.04A, the disorder of the spine, (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), must result in compromise of a nerve root (including the cauda equina) or the spinal cord, with: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and, if there is involvement of the lower back, (4) positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A; *Robinson v. Barnhart*, 2005 WL 2148931, at *5 (W.D. Tex. Aug. 29, 2005). Additionally, "[f]or any disability determination to be made, even under the Listings, the disabling condition must be found to last, or be expected to last, 'for a continuous period of not less than 12 months.' " *Edwards v. Colvin*, 2014 WL 3797366, at *6 (S.D. Tex. Jul. 30, 2014) (quoting 42 U.S.C. § 423(d)(1)(A)). This is because musculoskeletal impairments frequently improve with time or respond to treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00H1.

Therefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment unless the claim can be decided favorably on the basis of the current evidence. *Id.*

To show he satisfies the criteria of Listing 1.04A, Plaintiff relies on his August 19, 2012 MRI results that showed nerve root compression at L5-S1. (R. 318). As evidence of neuro-anatomic distribution of pain, Plaintiff cites to his testimony at the hearing of cramps and pain in his legs, as well as his report to the consultative examiner, Dr. Amariki, of cramping and pain in his legs and back. R. 44, 46, 202, 246, 247). As noted by the ALJ, despite his reports of pain, the musculoskeletal portion of Plaintiff's physical examination in February 2012 revealed "full range of motion, symmetric strength, and normal muscle tone without any atrophy or abnormal movements." (R. 247).

Regarding the criterion of limitation of motion of the spine, Plaintiff relies on his subjective reports of difficulty with squatting and bending, and Dr. Amariki's examination which purportedly "indicated reduced range of motion due to pain." (ECF No. 22, p. 5, citing R. 187, 209, 214, 247). While Plaintiff complained of problems with squatting and bending, and had difficulty with hopping and squatting at the consultative examination, Dr. Amariki found the range of motion in Plaintiff's lumbar spine to be within normal limits. (R. 247).

With regard to showing the required motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, Plaintiff cites to his subjective reports of loss of strength, being easily fatigued, and numbness to his back and legs. ( R. 196, 209, 225, 246). As stated above, the consultative examination showed no motor loss, but rather, full range of motion, symmetric strength, and normal muscle tone without atrophy. (R. 247). Moreover,

Plaintiff's deep tendon reflexes were normal. *Id.* Dr. Amariki found no abnormalities with regard to Plaintiff's ability to ambulate (without assistance) and no abnormalities with his gait and station. *Id.*

Plaintiff also argues the record shows evidence of bilateral positive straight-leg raising tests to satisfy the final criterion. (R. 247). Indeed, Dr. Amariki reported positive bilateral straight-leg raising tests, with pain radiating to the buttocks and posterior thighs. *Id.* The record does not show, however, that positive straight leg raising tests were obtained in both **sitting and supine** positions as clearly required by Listing 1.04A.

Although the ALJ did not discuss all the supporting evidence in the paragraphs immediately following her step three finding, the ALJ sufficiently discuss the supporting evidence in the remainder of her decision. In summary, as detailed above, the evidence does not establish that Plaintiff met the requirements in Listing 1.04A. Although Plaintiff cites to MRI results showing nerve compression, he exhibited normal reflexes, sensation, strength, and range of motion during the relevant period. Although the record shows he had a positive straight leg raise tests during the relevant period, it does not show the test was administered in both the sitting and supine positions as required. (R. 247). As discussed in *Falco*, the requirements under the Listings are exacting. *Falco*, 27 F.3d at162.

There is no prejudicial error shown in the ALJ's analysis of Plaintiff's back impairment at step three. While Plaintiff manifested some of the criteria of Listing 1.04A at various times during the relevant period, he has failed to provide and identify medical signs and laboratory findings that show his back impairment met all the Listing criteria for the 12-month period. Accordingly, he has not carried his step three burden to show his back impairment was of listing-level severity. *Selders*,

914 F.2d at 619; *Zebley*, 493 U.S. at 530.

### 2. ALJ Properly Accommodated Plaintiff's Inability to Communicate in English

Plaintiff contends the ALJ erred by failing to include in Plaintiff's RFC assessment his inability to communicate in English. The Commissioner considers an individual's inability to communicate in English as part of the individual's educational profile. 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5). Education is one of vocational factors considered together with RFC at step five of the sequential evaluation process. 20 C.F.R. §§ 404.1560(b)(3)-(c)(1), 416.960(b)(3)-(c)(1). Accordingly, the ALJ is not required to include Plaintiff's inability to communicate in English as a limitation in his RFC. *Id.*

Plaintiff also argues the ALJ erred by failing to include Plaintiff's inability to communicate in English as part of the hypothetical question posed to the VE. As conceded by the Commissioner, the ALJ did not expressly instruct the VE to consider a hypothetical person with an inability to communicate in English. (R. 50-51). In this Circuit, the test for determining when a defective hypothetical question will produce reversible error is set forth in *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). In order to provide substantial evidence for a step five decision, the hypothetical question posed to the VE must reasonably incorporate all disabilities of the claimant that are recognized by the ALJ. *Id.* at 436. Additionally, the claimant or his representative must be afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the VE any purported defects in the hypothetical question, including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question. *Id.*

A review of the record finds no defect in the relevant hypothetical question posed to the VE

by the ALJ. Further, while the ALJ did not refer specifically to Plaintiff's language ability, the record as a whole reflects that Plaintiff's education was considered. Plaintiff testified at the hearing with the aid of a Spanish language interpreter. In the presence of the interpreter, Plaintiff testified he attended school through the fifth grade and can not speak English. (R. 43). He further testified that he did not have to communicate in English at any of his past construction jobs. *Id.*

Prior to giving her testimony at the hearing, the VE confirmed that she had reviewed the files and exhibits to familiarize herself with Plaintiff's vocational background, and she also confirmed she had heard Plaintiff's testimony that day. (R. 48). At the hearing, Plaintiff did not raise any objections to the hypothetical question regarding his inability to communicate in English. (R. 51). In fact, when afforded the opportunity to cross-examine the VE, Plaintiff's counsel had no questions. *Id.* There is no error shown on this ground. *See Sustaita v. Astrue*, 2012 WL 3581163, at *7 (W.D. Tex. Aug. 17, 2012) (finding no error in hypothetical omitting claimant's inability to communicate in English where record indicated VE was informed about claimant's educational background, including his language ability, and claimant's attorney, although given opportunity to do so, did not amend the hypothetical question to clarify the effect of claimant's inability to communicate in English).

### 3. ALJ's RFC Assessment is Supported by Substantial Evidence

Plaintiff argues the ALJ's RFC assessment is not supported by substantial evidence because she failed to properly accommodate all the limitations resulting from his back impairment and obesity. Specifically, Plaintiff contends the evidence does not support the finding that he is capable of performing the six hours of standing and/or walking required under light work.

In support, Plaintiff relies on his subjective testimony and his reports of extreme pain and

limitations. (R. 44, 45, 46, 187, 196, 209, 214, 215). Plaintiff's statements and testimony alone, however, are insufficient to support further limitations as subjective complaints must be corroborated, at least in part, by objective medical findings. *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). As for objective evidence, he relies on Dr. Amariki's findings that Plaintiff had difficulty hopping and squatting, and had positive straight leg raising tests with pain radiating to the buttocks and thighs. (R. 247). Plaintiff also cites to an emergency room visit on May 7, 2012 for back pain. (R. 284-285). He further relies on an August 3, 2012, initial visit to a primary care doctor who assessed low back pain and ordered x-rays and an MRI of the lumbar spine. (R. 340, 342). He also relies on the August 19, 2012 MRI findings discussed previously. (R. 318).

A review of the cited objective medical evidence does not support Plaintiff's claim that he is unable to perform the walking and standing required by light work. As discussed earlier, Dr. Amariki found no abnormalities with regard to Plaintiff's ability to ambulate (without assistance) and no abnormalities with his gait and station. (R. 247). In fact, after examining Plaintiff and reviewing the record, Dr. Amariki concluded Plaintiff had no limitations with speaking, hearing, handling, objects, carrying, lifting, moving about, standing, and sitting. (R. 248).

As for Plaintiff's emergency room visit on May 7, 2012, he presented with a complaint of back pain for the past two days, with some shoulder pain, headache, nausea and dizziness. As noted by the ALJ, the records show Plaintiff was in no acute distress. Upon examination, his neck was non-tender with full range of motion. His back was non-tender and inspection was normal, despite a painful range of motion. His extremities were non-tender with normal range of motion. The clinical impression was low back pain. (R. 284-285).

At his initial visit to a primary care doctor on August 3, 2012, he asked to be evaluated for

back pain and requested a refill of vicoprofen.[5] As noted by the ALJ, upon examination, Plaintiff had bilateral tenderness in his spine from L3 to S1, but no paravertebral spasms. His extremities were normal. The assessment was low back pain, and x-rays and an MRI of the lumbar spine were ordered. (R. 340, 342). Significantly, the notes show Plaintiff was prescribed "ibuprofen[,] not vicoprofen." (R. 342). Further, the notes show that aerobic exercise, biking, and walking were recommended. (R. 343).

Plaintiff cites to SSR 02-1p[6] and complains the ALJ only mentioned obesity and SSR 02-1p at step three when she found "the medical evidence does not support that claimant's obesity has reached a level that would cause his other impairments to meet or medically equal a listed impairment." (R. 29). This contention is incorrect. The ALJ correctly acknowledged Plaintiff's severe impairment of obesity, while no longer a listed impairment in 20 C.F.R. Subpt. P, App.1, should be considered at each step of the sequential evaluation process. (R. 29). She "considered the claimant's obesity in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings as required by [SSR 02-1p]." Id. In assessing Plaintiff's RFC, she acknowledged his BMI

---

[5] Vicoprofen is a combination of hydrocodone and ibuprofen. PHYSICIANS' DESK REFERENCE 585 (66th ed. 2012).

[6] SSR 02-01p provides guidance for evaluating obesity in disability claims. SSR 02-1p, 2002 WL 34686281, at *1 (2002). Although there is no longer a specific listing for obesity, the ruling directs that obesity be considered in determining whether: (1) the individual has a medically determinable impairment; (2) the individual's impairment(s) is severe; (3) the individual's impairment(s) meet s or equals the requirements of a listed impairment in the Listings; and, (4) the individual's impairment(s) prevents him from doing past relevant work and other work. Id. at *3. The ruling reminds ALJs that obesity can cause limitation of function, and its combined effects with other impairments (particularly musculoskeletal, respiratory and cardiovascular) may be greater than might be expected without obesity. Id. at *5-6. It also states, however, that assumptions are not to be made about the severity or functional effects of obesity combined with other impairments, as obesity may or may not increase the severity or functional limitations of the other impairment. Id. at *6. Each case is to be evaluated based on the information in the case record. Id.

was 42.3. She explained that, in Plaintiff's case, his "obesity, in combination with [his] other impairments, is a severe impairment as it results in significant limitation of [his] ability to perform other work-related activity." (R. 31). She determined that Plaintiff's "obesity, when taken in combination with the other impairments, counsels in favor of the postural and exertional limitations indicated herein." *Id.* Importantly, Plaintiff does not cite to any physician-imposed limitations resulting from his obesity and back impairment that were not considered and by the ALJ and accommodated in the RFC assessment.

The ALJ also considered Plaintiff's subjective complaints of pain and functional limitations, and determined, based on consideration of the entire case record, that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (R. 30). The ALJ's determination that the medical evidence was more persuasive than Plaintiff's own testimony is precisely the kind of determination the ALJ is best positioned to make. *Falco*, 27 F.3d at 164. Her credibility determination is entitled to great deference. *Newton*, 209 F.3d at 448.

The ALJ complied with SSR 02-1p when assessing Plaintiff's RFC, and he has not demonstrated that the combination of his obesity and back impairment caused limitations beyond those the ALJ recognized in the RFC assessment. (R. 29-31). Plaintiff has not shown any error on this ground.

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The task of the Court is merely to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Id.*, citing *Greenspan*, 38 F.3d at 240. As substantial evidence supports the ALJ's decision, it must be affirmed. *Spellman*, 1 F.3d

at 360.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this 29th day of April, 2016.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

15